UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRACY G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C20-5000-MLP <br><br> ORDER |

## I.  INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by improperly evaluating the medical evidence, discounting her testimony and lay witness statements, and by fashioning an erroneous residual functional capacity ("RFC"). (Dkt. # 24 at 2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

## II.  BACKGROUND

Plaintiff was born in 1970 and has no past relevant work. AR at 1260. Plaintiff applied for benefits on January 19, 2012, alleging disability as of January 19, 2012. *Id.* at 1261. Plaintiff's application was denied initially and on reconsideration. On October 10, 2013, an ALJ

ORDER - 1

issued a decision finding Plaintiff not disabled. *Id.* at 8-26. The District Court reversed the decision and remanded the case for further proceedings. *Id.* at 568. On July 5, 2017, Plaintiff's case was reheard by the same ALJ, again finding Plaintiff not disabled. *Id.* at 1356-78. The District Court remanded this decision for further proceedings on January 30, 2019. *Id* at 1442-55. Based upon this remand order, the ALJ held a hearing in August 2019, taking testimony from Plaintiff and a vocational expert. *See id.* at 1317-55. In August 2019, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 1237-61. In relevant part, the ALJ found Plaintiff's severe impairments of fibromyalgia, mild disc space narrowing of the lumbar spine, mild curvature of the thoracic spine, patellofemoral syndrome involving both knees, anxiety, depression, and personality disorder limited her to light work subject to a series of further limitations. *Id.* at 1244, 1248. Based on vocational expert testimony the ALJ found Plaintiff could perform light jobs found in significant numbers in the national economy. *Id.* at 1260-61. Plaintiff appealed this final decision of the Commissioner to this Court. (Dkt. # 5.)

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in Evaluating the Medical Evidence

A treating doctor's opinion is generally entitled to greater weight than an examining doctor's opinion, and an examining doctor's opinion is entitled to greater weight than a non-examining doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the contradicted opinion of a treating doctor by giving "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

#### 1.   The ALJ Did Not Err by Discounting the Opinion of Examining Psychologist Scott T. Alvord, Psy.D.

The ALJ gave "little weight" to the March 2012 opinion of examining psychologist Dr. Alvord. AR at 1256. Plaintiff argues "[n]one of the ALJ's reasons for rejecting Dr. Alvord's opinion are legitimate reasons supported by substantial evidence[.]" (Dkt. # 8 at 4; *see also* dkt. # 26 at 2) ("The Commissioner does not directly refute [Plaintiff's] argument that none of the ALJ's reasons for rejecting Dr. Alvord's opinion are legitimate reasons supported by substantial evidence[.]") Plaintiff bears the burden of showing the ALJ harmfully erred. *See Molina v. Astrue*, 674 F.3d at 1111. Here, Plaintiff's argument is nothing more than a conclusory statement that the ALJ erred, made without elaboration, explanation, or citation to supportive evidence.

1  Plaintiff thus falls far short of meeting her burden to show the ALJ harmfully erred and the Court
2  accordingly affirms the ALJ's determination to discount Dr. Alvord's opinions. *See Indep.*
3  *Towers of Washington v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("Our adversarial
4  system relies on the advocates to inform the discussion and raise the issues to the court . . . . We
5  require contentions to be accompanied by reasons."); *see generally Carmickle v. Commissioner*,
6  533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any
7  specificity); *see also James M. v. Comm'r of Soc. Sec.*, No. C19-5755-BAT, 2020 WL 3605630,
8  at *2 (W.D. Wash. July 2, 2020) ("[I]t is not enough merely to present an argument in the
9  skimpiest way (i.e., listing the evidence), and leave the Court to do counsel's work—framing the
10 argument, and putting flesh on its bones through a discussion of the applicable law and facts.").

11         Plaintiff also argues the ALJ did not "adequately explain why he chose to reject evidence
12 that had been given 'great weight'" by a prior ALJ. (Dkt. # 24 at 4.) Plaintiff fails to explain how
13 or why this failure constitutes reversible error. To the extent the argument implies the ALJ erred
14 by failing to give some res judicata effect to the earlier ALJ's determination, the argument fails.
15 Res judicata precludes parties from relitigating the merits of issues resolved in a prior final
16 decision that was not reversed on appeal. *Cf. Federated Dept. Stores Inc. v. Moite*, 452 U.S. 394,
17 398 (1981) (the res judicata consequences of a final, unappealed judgment on the merits are not
18 altered by the fact the judgment may be wrong). Here, both decisions of the prior ALJ were
19 reversed by the district court and remanded for further administrative proceedings. AR at 1240.
20 In reversing and remanding the most recent decision of the prior ALJ, the District Court ordered
21 the ALJ to conduct "a *de novo* hearing and issue a new decision." *Id*. at 1447. Because the prior
22 ALJ's decisions were reversed, the ALJ in this case was not required to explain or give any
23 effect to the prior ALJ's finding.

ORDER - 4

2. *The ALJ Did Not Err by Discounting the Opinions of Examining Psychologist David Morgan, Ph.D.*

Dr. Morgan examined Plaintiff in 2012, 2014, 2016, and 2017. AR at 1258. The ALJ gave "little weight" to Dr. Morgan's opinions. *Id*. The ALJ found that, in November 2012, Dr. Morgan could not determine "the severity of the claimant's impairments" because "she refused to participate in an examination." *Id*. The ALJ further found that, in April 2014, Dr. Morgan reported the Plaintiff had a variety of "marked limitations." *Id*. The ALJ found that Dr. Morgan reported the Plaintiff had similar "marked limitations" in February 2016 and again in January 2017. *Id*. The ALJ found the "marked limitations" were "not explained and appear to be based on the claimant's unsupported" and inconsistent statements. *Id*. For example, the ALJ found that while Plaintiff "told Dr. Morgan she spends most of her time in her room and has little motivation to be around others due to anxiety," her testimony "implies that she began dating her boyfriend around the time of Dr. Morgan's first examination." *Id*. Similarly, the ALJ found Plaintiff's description of her "activities of daily living" reported to Dr. Morgan conflicted with her function reports in 2012 and 2015, wherein "she indicated she prepares meals, does light housework, drives, and shops in stores." *Id*. The ALJ found that Plaintiff's "description of very limited activities to Dr. Morgan was inaccurate and unreliable." At bottom, the ALJ found that, contrary to Dr. Morgan's reporting of "marked limitations," the "evidence of the claimant's activities of daily living such as childcare, driving, shopping in stores, spending time with a boyfriend, doing housework . . . suggest she can complete simple tasks adequately and tolerate casual social interactions and changes in routine." *Id*. at 1259.

Plaintiff contends that the ALJ's assignment of "little weight" to Dr. Morgan's opinions is not supported by substantial evidence. (Dkt. # 24 at 5-6.) Plaintiff argues that the ALJ

mischaracterized the foundation of Dr. Morgan's opinions, contending, without elaboration, that "Dr. Morgan did not base his opinions 'mostly' on [Plaintiff's] statements." (*Id.* at 6.)

Plaintiff also argues that, while the ALJ "asserts that [Plaintiff] gave inconsistent information to Dr. Morgan . . . [i]n fact, there are no significant inconsistencies between [Plaintiff's] reports to Dr. Morgan and her testimony." (Dkt. # 24 at 6.) Similarly, Plaintiff avers that "none of [Plaintiff's] activities are inconsistent with Dr. Morgan's opinions." (*Id.*) Plaintiff does not, however, account for the numerous inconsistencies the ALJ found concerning Plaintiff's reports and activities. Plaintiff's blanket statements that there were "no" inconsistencies and "none" existed are, again, made without elaboration, explanation, or citation to supportive evidence. In any event, the ALJ reasonably discounted Dr. Morgan's opinion as resting upon reports made by Plaintiff that are unsupported or inconsistent. An ALJ may properly reject a physician's opinion that is inconsistent with the record and not supported by objective evidence. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Substantial evidence supports the ALJ's finding that Plaintiff made contradictory statements upon which Dr. Morgan relied in forming his opinions, and the Court according finds the ALJ did not err.

Finally, Plaintiff challenges the ALJ's finding that Dr. Morgan's opinions are "inconsistent with the evidence of improved mental symptoms." (Dkt. # 24 at 6 (quoting AR at 1258).) Plaintiff argues that a waxing and waning of symptoms "over the course of several years is not a legitimate reason to reject any of Dr. Morgan's opinions." (*Id.*) However, the record supports the ALJ's finding. *See, e.g.*, AR at 1905 (therapy treatment plan created on November 4, 2015); *id.* 1918 (therapy session notes from December 9, 2015, indicating Plaintiff "engaged well in session and interacted appropriately with this therapist."); *id.* at 1956 (therapy session notes from April 25, 2016, indicating Plaintiff reported "I am doing better and trying to stay

ORDER - 6

positive about things"); *id.* at 1957 (therapy session notes from May 4, 2016, indicating Plaintiff was able to "discuss the negative self-talk's impact on her functioning" and that Plaintiff reported feeling "actually proud" after engaging in therapeutic exercise); *id.* at 1985 (therapy session notes from August 29, 2016, indicating Plaintiff "shared her goal of healthy living and exercise," "opened up quite a bit during the group," "problem solved through her goal and asked for help throughout the process," and reported a "confidence level" of "10" for her goal); *id.* at 2719 (therapy session notes from November 20, 2018, indicating Plaintiff "appears to be making progress as evident by reported success in setting boundaries and working to change unhealthy relationship patterns"); *id.* at 2729 (therapy session notes from February 26, 2019, indicating Plaintiff and therapist "completed 180-day treatment review. Client identified progress she had made in the last 6 months and future goals."). Substantial evidence supports the ALJ's determination and the Court accordingly affirms the ALJ's determination to discount Dr. Morgan's opinions.

> 3. *The ALJ Did Not Err by Discounting the Opinion of Examining Psychologist Peter A. Weiss, Ph.D.*

The ALJ gave "little weight" to the February 2015 opinion of examining psychologist Dr. Weiss. AR at 1259. The ALJ found Dr. Weiss reported a variety of "marked" limitations and noted an "extreme" limitation in "completing a normal workday/week without interruptions from psychologically based symptoms." *Id*. The ALJ found that "he appears to base his opinion on the claimant's unsupported statements." *Id*. In particular, the ALJ found Plaintiff's description of limited activities of daily living as reported to Dr. Weiss to be "inconsistent" with her 2015 function report. *Id.* The ALJ found Plaintiff was "not seeking treatment from healthcare providers for daily panic attacks at the time of the examination (or before), which seems very inconsistent with her alleged symptoms." *Id*. The ALJ found that Dr. Weiss "observed that the

ORDER - 7

claimant's attention, concentration, and memory were within normal limits, which seems inconsistent with marked and extreme limitations in functions." *Id*. The ALJ also found that her "marked limitations also seem inconsistent with the evidence of the claimant's activities of daily living such as childcare, driving, shopping in stores, spending time with a boyfriend, [and] doing housework, which suggest she can complete simple tasks adequately and tolerate casual social interactions and changes in routines." *Id.*

Plaintiff argues that the ALJ "does not identify any of [Plaintiff's] activities that actually contradict Dr. Weiss's opinion." (Dkt. # 24 at 7.) To the contrary, as detailed above, the ALJ identified five activities that the ALJ found were inconsistent with Dr. Weiss's evaluation of marked limitations, and Plaintiff fails to explain how or why the ALJ's finding is erroneous.

Plaintiff also argues that, contrary to the ALJ's finding that Plaintiff "was not seeking treatment from healthcare providers for daily panic attacks" at the time of Dr. Weiss's evaluation, AR at 1259, "there is no indication in the record that [Plaintiff] had insufficient insight at that time to seek out such treatment." (Dkt. # 24 at 7.) Plaintiff's reliance on *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) in support of this argument is off point. The ALJ did not fault Plaintiff for not seeking treatment for daily panic attacks or seeking treatment "late in the day" as the ALJ in *Nguyen* erroneously did. *Id.* at 1465. Rather, the ALJ reasonably found Plaintiff's previous mental health treatment did not document "daily" panic attacks and that, accordingly, Plaintiff's reporting to Dr. Weiss was inconsistent with reports Plaintiff made to other providers. The record supports the ALJ's finding. While Plaintiff's records contain reports of panic attack, her records do not indicate Plaintiff was seeking treatment for daily panic attacks. *See, e.g.*, AR at 990 (Dr. Morgan's clinical interview notes from April 22, 2014, indicating Plaintiff reported, "I have anxiety and panic attacks"); *id.* at 978 (physical functional

ORDER - 8

report prepared by Cheryl Einerson, FNP-C, on March 6, 2014, indicating "panic attacks" as a "reported symptom[]"); *id.* at 783 (treatment notes from Stephen Greaney, M.D., on June 6, 2014, indicating Plaintiff reported "2-3 hours of sleep each night due to anxiety, panic attacks and involuntary muscle spasms."); *id.* at 797 (treatment notes from Dr. Greaney on August 4, 2014, indicating "Effexor allows her to sleep through the night, despite spasms. Also seems to have helped with her anxiety."). The Court accordingly concludes the record reasonably supports the ALJ's determination to discount Dr. Weiss's opinion.

Finally, Plaintiff argues that "none of the ALJ's reasons [for discounting Dr. Weiss's opinion] are legitimate reasons supported by substantial evidence. Dr. Weiss's opinion is consistent with the clinical findings from treatment providers, and it is also consistent with [Plaintiff's] activities." (Dkt. # 24 at 7.) This is a conclusory argument and, as noted above, arguments made without elaboration, explanation, or citation to supportive evidence are insufficient to establish the ALJ harmfully erred and are accordingly rejected.

    4. *The ALJ Did Not Err by Discounting the Opinions of Examining Psychologist Jack M. Litman, Ph.D.*

The ALJ gave "little weight" to the July 2015 opinion of examining psychologist Dr. Litman. AR at 1257. At the outset, the ALJ found that Dr. Litman's assessment that the Plaintiff had a "'remote prognosis' for even part-time work" is "an opinion on an issue reserved for the Commissioner[.]" *Id*. The ALJ found that Dr. Litman noted Plaintiff "presented with obsessive compulsive behaviors." The ALJ found, however, that "OCD symptoms were rarely, if ever, reported to treating sources and providers observed no significant or persistent OCD symptoms, which strongly suggests that Dr. Littman's [sic] opinion does not reliably reflect the claimant's long-term functioning." *Id*. The ALJ also found that Dr. Litman "appear[ed] to base some of his opinions on the claimant's physical appearance at the examination," but found that "[t]he other

ORDER - 9

treating and examining sources rarely, if ever commented on the claimant's physical appearance, and her mental health providers rarely noted significant or persistent issues with hygiene, grooming, or dress." *Id*. The ALJ found that "the observation of the claimant's appearance would not be reliable for evaluating her long-term functioning." *Id*. The ALJ also found that "the medical evidence shows a trend of improved mental symptoms when the claimant engaged in mental health treatment later in 2015. This suggests that Dr. Littman's [sic] opinion does not reliably reflect the claimant's long-term functioning." *Id.* (internal citation omitted). Finally, the ALJ found that Dr. Litman "made a diagnosis of learning disorders versus neurocognitive disorder." *Id*. However, the ALJ found that "the evidence of record shows no reference to neurocognitive or learning disorders from the other examining psychologists and treating sources," and that the "neurocognitive disorder also seems unsupported by Dr. Littman's [sic] mental status examination, which showed some tangential speech, but fair comprehension, and the ability to complete serial three exercises." *Id*.

Plaintiff contends that the ALJ erroneously rejected Dr. Litman's opinion concerning Plaintiff's "prognosis" for employment. (Dkt. # 24 at 9.) However, the ALJ appropriately found this statement to infringe upon a determination reserved for the Commissioner. 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to

education, age, technological, economic, and social factors, affects ability to engage in gainful activity. . . . The law reserves the disability determination to the Commissioner.").

Next, Plaintiff argues that the "ALJ also asserts [Plaintiff] did not describe OCD symptoms to other providers. In fact, [Plaintiff] did discuss this with her therapists." (Dkt. # 24 at 9) (citation omitted). Plaintiff mischaracterizes the ALJ's finding. The ALJ found that Plaintiff "rarely, if ever, reported" OCD symptoms. AR at 1257. The ALJ's finding is thus supported by substantial evidence in the record.

Finally, Plaintiff maintains that the ALJ "improperly attempt[ed] to act as his own medical expert" in challenging whether "Dr. Litman's opinions are consistent with his findings." (Dkt. # 24 at 9.) The ALJ, however, was entitled to reject a medical opinion contradicted by clinical evidence created by Dr. Litman himself. *See Bayliss*, 427 F.3d at 1216 (the rejection of a doctor's opinion due to discrepancy or contradiction between the opinion and the doctor's own notes or observations is "a permissible determination within the ALJ's province."). It was not unreasonable for the ALJ to conclude that Dr. Litman's diagnosis of a neurocognitive disorder is inconsistent with the results of the mental status examination administered by Dr. Litman.

For the foregoing reasons the Court affirms the ALJ's treatment of Dr. Litman's opinions.

> 5.  *The ALJ Did Not Err by Accepting the Opinions of Non-Examining Psychologists Drs. Vincent Gollogly, Ph.D., and Renee Eisenhauer, Ph.D.*

The ALJ gave "great weight" to the 2018-2019 State agency mental assessments compiled by Drs. Gollogly and Eisenhauer. AR at 1256. The ALJ found that, in September 2018, Dr. Gollogly assessed the Plaintiff "was capable of remaining on task enough of the time to complete work assignments in an acceptable time-frame," with certain limitations. *Id.* Similarly, the ALJ found that Dr. Eisenhauer, in January 2019, assessed the Plaintiff as "able to sustain

ORDER - 11

simple and repetitive tasks for two hour increments with regular breaks during a normal eight-hour workday, [and] can persist for the completion of simple work tasks for a 40 hour workweek within the customary tolerances of competitive employment." *Id*. The ALJ found that Dr. Eisenhauer "indicated the same limitations in social interactions and adaptation reported by Dr. Gollogly." *Id*. The ALJ found that both assessments were "consistent with the observations of attention and concentration by providers and some examining sources, and the improvement in mental symptoms with treatment since 2015." *Id*. The ALJ further found that the Plaintiff's "activities of daily living also seem consistent with the 2018-2019 mental assessments." *Id*.

Plaintiff argues the ALJ erroneously gave greater weight to these non-examining sources over the examining sources discussed above, contending that "the non-examiners' opinions are not fully consistent with the opinions of Dr. Alvord, Dr. Morgan, Dr. Weiss, and Dr. Litman." (Dkt. # 24 at 15.) Because the ALJ properly discounted the opinions of those medical sources, however, he did not err in giving weight to the opinions of the non-examining sources. *See Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) ("[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'") (quoting *Andrews,* 53 F.3d at 1039). The Court accordingly affirms the ALJ's treatment of the opinions of Drs. Gollogly and Eisenhauer.

      6.    *The ALJ Did Not Err Based on Other Medical Evidence*

Plaintiff lists, seriatim, findings and notations of Dr. Greaney, Kye Park, M.D., Nurse Practitioner Einerson, Steven Hill, M.D., Andrew Sheppert, M.D., Daren Benson, DPM, Nina Upham, M.D., Andrew Sahnow, PT, L. Susana Serna, NP, Basheer Badiei, M.D., Amy L. Hutchins, MA, Priscilla Gilbert, MA, Nicole Lara, NP, Rubee Gonzales, PA-C, Kristina Fant, LMHC, Amur Bhuta, M.D., Sheila Santhappa, M.D., and Michael D. Rothenfluch, M.D. (Dkt.

ORDER - 12

# 24 at 9-14). She states the findings of these sources support the opinions of Drs. Alvord, Morgan, Weiss and Litman and also supports her testimony. (*Id.* at 15.) The Court rejects Plaintiff's conclusory statements as grounds to reverse the ALJ. As discussed above, Plaintiff bears the burden to show the ALJ harmfully erred and conclusory statements regarding Plaintiff's view of the record are insufficient to meet this burden.

### B.   The ALJ Did Not Err by Discounting Plaintiff's Testimony

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

The ALJ indicated Plaintiff testified that she is "unable to work due to physical and mental symptoms including fibromyalgia, spinal disorders, anxiety, and depression." AR at 1248. The ALJ indicated Plaintiff testified that "treatment does not relieve her fibromyalgia pain symptoms"; that she "cannot sustain exertional activities for very long due to joint pain"; that she has "panic attacks triggered by stress or being around crowds," which "happen a couple of times a month"; and that she has "difficulty remembering and concentrating." *Id*. The ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. The ALJ found "the evidence of record supports finding that the claimant was (and is) capable of working fulltime at the light exertional level with other nonexertional limitations for her physical and mental impairments." *Id*. at 1249.

1   Turning to Plaintiff's testimony concerning the severity of her physical symptoms, the
2   ALJ found the Plaintiff "had a history of fibromyalgia," but that it had been treated with a variety
3   of medications. AR at 1249. The ALJ found that "[d]espite reporting that nothing improved her
4   pain symptoms, it was noted in late 2018 that her fibromyalgia was stable." *Id*. The ALJ found
5   that Plaintiff "continued to be prescribed Flexeril in late 2018, which suggests she at least
6   partially benefits from this treatment." *Id*. The ALJ found Plaintiff's testimony concerning the
7   severity of her pain inconsistent with "the level of activity noted throughout the treatment
8   record." *Id*. The ALJ found that Plaintiff "was not observed to have significant or persistent
9   difficulty ambulating due to fibromyalgia symptoms," nor "more than slight weakness in the
10  extremities." *Id*. The ALJ found that "[s]ome healthcare providers described the claimant as
11  having an exaggerated response to light touch, being overly dramatic, or that her reported
12  symptoms were out of proportion to injuries or objective findings." *Id*. The ALJ further found
13  "routine and conservative treatment for back pain" and "weak objective evidence" supporting the
14  same. *Id*. Finally, the ALJ found that Plaintiff "rarely complained specifically of knee pain to
15  providers after 2015." *Id*.

16  Plaintiff argues that, in discounting Plaintiff's testimony concerning her fibromyalgia, the
17  ALJ erred by "rejecting [Plaintiff's] testimony in part based on findings that are unrelated to
18  fibromyalgia" and "failing to properly evaluate" Plaintiff's symptoms "pursuant to SSR 12-2p"
19  and *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004). (Dkt. # 24 at 16.) To the contrary, the
20  ALJ found fibromyalgia is a severe impairment, but found the record does not support the
21  severity of Plaintiff's fibromyalgia-related pain allegations. The ALJ reasonably discounted
22  Plaintiff's testimony based on, among other things, contradictory medical reports, a showing of
23  improvement from Flexeril, and levels of activity that are inconsistent with her alleged severity

ORDER - 14

of pain. Because substantial evidence supports the ALJ's finding, the ALJ did not err in discounting Plaintiff's physical pain testimony.

Next, turning to Plaintiff's testimony concerning the severity of her mental symptoms, the ALJ found that "[t]he evidence shows little mental health treatment and few reports of significant mental health symptoms in 2013 and 2014." AR at 1251. The ALJ found that Plaintiff "began receiving therapy sessions at a mental health clinic in late 2015." *Id*. at 1252. The ALJ found that Plaintiff "was initially assessed with only mild depression, but she also complained of panic attacks." *Id*. The ALJ found that while Plaintiff's "symptoms waxed and waned during the course of her treatment," there was a "trend of improved symptoms and functioning." *Id*. The ALJ found that "treatment notes reference the claimant being able to identify triggers for symptoms, coping better with stress, and setting boundaries, which strongly suggests an improvement in her ability to manage her psychologically based symptoms." *Id*. The ALJ found that, over time, "her anxiety was more manageable" and her depression "was noted to be in partial remission in early 2019." *Id*. The ALJ found that because Plaintiff "testified that she met her boyfriend during the period of issue through a friend, goes on dates to small restaurants, and often goes for short walks or to the store . . . the report of declining symptoms in mid-2018 is unpersuasive." *Id*. at 1255. The ALJ found that "reports of preparing food, driving, shopping in stores, doing housework, and going to a party, also suggest that the claimant is capable of light work, completing simple tasks, and tolerating casual social interactions." *Id*.

Plaintiff argues that the ALJ erred by "selectively cit[ing] treatment notes which show that [Plaintiff] experienced some improvement with mental health treatment" and by asserting that Plaintiff's "activities are inconsistent with her testimony." (Dkt. # 24 at 16-17.) Plaintiff's conclusory arguments do not identify how the ALJ's findings are unsupported and thus why the

ORDER - 15

ALJ erred. Plaintiff does not show with any specificity that the record does not support the ALJ's findings. On the contrary, as noted above, the ALJ's findings are supported by substantial evidence. The Court accordingly concludes the ALJ's determination to discount Plaintiff's testimony is supported by substantial evidence and affirms the ALJ.

### C. The ALJ Did Not Err by Discounting the Lay Witness Statements

An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Plaintiff contends the ALJ's treatment of SSA interviewers' observations and Plaintiff's mother's statements were erroneous.

The ALJ found that SSA interviewers observed Plaintiff to be "tearful," but found, based on evidence in the record, that Plaintiff "is able to manage her emotions somewhat better than alleged." AR at 1253. The ALJ further found that he is "not persuaded that the observations of the SSA interviewer are reflective of the claimant's functioning in interactions on a long-term basis or during the period at issue in this decision." *Id*. Plaintiff argues that "this reason is not germane to the lay witnesses." (Dkt. # 24 at 17.) Plaintiff's argument disregards the full explanation the ALJ provided regarding the SSA interviews. The ALJ found the interviewers' observations do not indicate Plaintiff was "distraught due to physical or mental symptoms," noting Plaintiff "reported some improvement in crying" and a "psychiatric nurse rarely observed the claimant to be labile during apppointments, which suggests she is able to manage her emotions better than alleged." AR at 1253. This unchallenged rationale is a germane reason for the ALJ's finding that the SSA interviewer's observations did not support Plaintiff's claim she is disabled. The Court thus affirms the ALJ's treatment of the SSA interviewer's observations.

The ALJ found statements from Plaintiff's mother to be "consistent with Plaintiff's allegations" and "not consistent" with medical evidence and Plaintiff's activities of daily living.

ORDER - 16

AR at 1259. Plaintiff argues that the ALJ's reasoning "is not supported by substantial evidence, and it is not a germane reason to reject Ms. Rudolph's observations." (Dkt. # 24 at 18.) The Court rejects the argument. Where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Here the ALJ found Ms. Rudolph's descriptions of Plaintiff's limitations consistent with Plaintiff's statements and rejected Ms. Rudolph's for the same reason he rejected Plaintiff's statements: that they were inconsistent with the medical evidence, observations of limited pain behavior, improvement in mental symptoms with treatment, and Plaintiff's daily activities. The Court accordingly concludes the ALJ's findings regarding the lay testimony are supported by substantial evidence and affirms the ALJ's determination.

    **D.    The ALJ's Did Not Err by Formulating Plaintiff's RFC and Making Step Five Findings**

Plaintiff argues the Court should find the ALJ's RFC determination and step-five findings are erroneous because the ALJ failed to include all limitations assessed by Drs. Alvord, Morgan, Weiss, and Litman, and also improperly discounted Plaintiff's testimony and the testimony of the lay witnesses. (Dkt. # 24 at 18.) The argument is foreclosed because, as discussed above, the ALJ gave valid reasons supported by substantial evidence to discount the doctors' opinions and the testimony of Plaintiff and the lay witnesses.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED with prejudice.

\\

\\

ORDER - 17

1  Dated this 15th day of January, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 18